UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
MARILUZ CARMONA

                                                                                            Case No.:

                             **Plaintiff,**

       -against-

**GENE R. KAZLOW**
      **D/B/A KAZLOW & KAZLOW**

**XAVERIAN HIGH SCHOOL**
                             **Defendants.**
--------------------------------------------------------------------X

## ORIGINAL COMPLAINT

Plaintiff Mariluz Carmona brings suit for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA) and for conversion. In brief, Defendant Kazlow & Kazlow, a debt collection law firm, violated the FDCPA and committed conversion and violated the FDCPA by repeatedly executing a state court judgment despite a court order staying collection, and for refusing to return those moneys even as of today. Judgment creditor Xaverian High School is liable for the conversion as Kazlow & Kazlow was acting as its agent.

### A.   JURISDICTION AND VENUE

1.   The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in Kings County, New York.

### B. PARTIES

3. Plaintiff MARILIUZ CARMON ("Ms. Carmona") is an individual residing in Brooklyn, New York.

4. Defendant GENE R. KAZLOW, doing business as KAZLOW & KAZLOW" ("Kazlow") is an individual who, on information and belief, is a resident of the State of New York. Kazlow & Kazlow has its principal place of business at 237 West 35 St, 14th Floor, New York, NY 10001. Defendant engages in business in New York, and this suit arose out of said Defendant's business in New York. The New York Secretary of State has no listing currently nor has it ever had a listing for Kazlow & Kazlow.

5. Defendant XAVERIAN HIGH SCHOOL is a private catholic high school at 7100 Shore Road, Brooklyn, New York 11209.

### C. STATEMENT OF FACTS

6. On or about April 27, 2005, attorney Gene R. Kazlow d/b/a Kazlow & Kazlow ("Kazlow) filed a collection lawsuit against now-Plaintiff Mariluz Carmona in *Xaverian High School v. Mariluz Carmona,* CV-44325-05/KI ("the collection lawsuit"). [Exh A, "Summons and Complaint"].

7. Xaverian sought to collect a putative debt for $4,634.00 (together with interest), allegedly owed for tuition. *Id*.

8. At all relevant times, Defendant Kazlow was acting as the agent of Xaverian within the course and scope of its agency.

9. Carmona was never served with the collection lawsuit.

10. Kazlow filed an affidavit of service that falsely stated the Ms. Carmona was served. [Exh B, "Affidavit of Service"]

11. Based on the false representations in the affidavit, Xaverian obtained a default judgment on July 18, 2005 against Ms. Carmona for $6,687.18, inclusive of interests and costs. [Exh C, "Default Judgment"].

12. Beginning on or about March 31, 2015, Defendants began to garnish Ms. Carmona's wages.

13. Ms. Carmona did not know nor could she have reasonably known prior to the garnishment that Defendants filed a collection lawsuit against her or obtained a judgment in that collection lawsuit.

14. On May 15, 2015, Ms. Carmona filed a *pro se* Order to Show Cause (OSC) to vacate to default judgment. [Exh D, "May 15, 2015 Order to Show Cause"]. As she stated in her affirmation, the first notice she received of the lawsuit was the garnishment of her wages. Further, the court file was in archives so she was not able to obtain he affidavit of service to rebut the allegations therein, she stated in her affirmation.

15. Finding merit to the application, Judge Reginald A. Boddie signed the OSC that same day, May 15, 2015. The OSC stayed enforcement of the judgment pending a hearing on the OSC and the entry of an order from the hearing. *Id*. Ms. Carmona immediately mailed the OSC to Kazlow and the marshal garnishing her wages.

16. That Motion to Vacate Judgment was scheduled for May 28, 2015, and later adjourned to June 17, 2015. [Exh E, "Order to Show Cause to Reargue", paragraph 6]. As per the May 15, 2015 OSC, the collection stay remained in effect until "the hearing of this Order to Show Cause *and the entry of an Order thereon*…" (emphasis added). [Exh D, "May 15, 2015 Order to Show

Cause"].

17. Kazlow filed an Affirmation in Opposition on June 3, 2015. [Exh F, "Opposing Affirmation"].

18. The Motion to Vacate Judgment was adjourned again, to allow Carmona to submit a reply to the June 3 2015 Affirmation. The Kazlow Affirmation attached the putative affidavit of service, which Carmona was unable to review because the court file was in archives. [Exh G].

19. Carmona submitted a Reply to Kazlow's Affirmation on July 1, 2015. [Exh G, "Reply to Affirmation in Opposition"].[1]

20. On September 10, 2015, the Court entered a decision denying Carmona's Order to Show Cause to Vacate Judgment. [Exh H, "Decision Order"].

21. Promptly thereafter, on September 16, 2015 Ms. Carmona filed an Order to Show Cause for Permission to Reargue. [Exh E, "September 16, 2015 OSC"].

22. Finding merit to the application, Judge Harriet L. Thompson, signed the OSC that very same day. The OSC was then immediately served on Kazlow.

23. The September 16, 2016 OSC contained the same injunction as did the May 15, 2015 OSC, enjoining all collection activity until the hearing on the OSC "and the entry of an Order thereon…" *Id*.

24. Ms. Carmona's wages were garnished on September 30, 2015, in violation of the

---

1 Carmona noted in her affirmation noted on July 21, 2009 the NYC Department of Consumer Affairs ("DCA") revoked the process server license of Gene Gagliardi, the person who allegedly served the summons and complaint on Ms. Carmona's non-existent female relative. The DCA fined Mr. Gagliardi and forever barred him from engaging in process serving, or from owning or operating any type of business licensed by the DCA. [Exh L, "Assurance of Discontinuance"].

Further, while not in the papers in the collection case, it bears mentioning that, according to a criminal complaint against the operator of a major process serving company, American Legal Process (ALP), ALP's database showed 450 instances where Mr. Gagliardi contended he was serving process in two places at the same time, 18 times at 3 locations at same time, and twice at 4 locations at same time. [Exh M, "Felony Complaint, People of the State of New York v. William Singler and ZMOD Process Corporation, Inc. dba American Legal Process, Inc., 10th Judicial District, Nassau District Court, April, 2009. "]

September 16, 2015 Order to Show Cause.

25. The Motion to Reargue was adjourned to October 14, 2015.

26. The next day, October 15, 2015, Ms. Carmona's wages were garnished again in violation of the September 16, 2015 Order to Show Cause. *Id*.

27. Also on October 15, 2015, Kazlow filed an Affirmation in Opposition to the September 16 Order to Show Cause. [Exh I, "Opposing Affirmation"].

28. On or about October 20, 2015, the Motion to Reargue was submitted, per eCourts.

29. On October 30, 2015, Ms. Carmona's wages were garnished, yet again in violation of the September 16, 2015 Order to Show Cause. [Exh J].

30. On November 4, 2015, attorney Sidney Cherubin sent an email to Ingrid Golemi, of Kazlow & Kazlow, informing her that the garnishment of Ms. Carmona's wages was improper and asking that the money be returned to her account. To date, this has not occurred. *Id*.

31. On November 5, 2015, the September 16, 2015 Motion to Reargue was denied. [Exh K, "Court Order"].

32. On November 4, 2015, CLARO attorney Sidney Cherubin sent an email to Ingrid Golemi, of Kazlow & Kazlow, informing her that the garnishment of Ms. Carmona's wages was improper and demanding that the money be returned to her account. [Exh J]. To date, this has not occurred.

33. On November 15, 2015 Ms. Carmona filed a Notice of Appeal of the denial of the OSC to vacate the default judgment and the OSC for reargument. That appeal is pending.

34. There is are legal and factual questions as to whether Ms. Carmona rebutted the presumption of service given the affidavit of service, and whether she has shown or is even required to show a meritorious defense. The trial court ultimately did not vacate the default

judgment, nor did the court reconsider its order denying the motion to vacate. These issues are an appeal in state court.

35. The claims in this federal suit are not related to the issues on appeal in the state court case. Rather, the issue here is whether Kazlow used false, deceptive, misleading, unfair, or unconscionable means or representations in violation of the FDCPA in connection with the attempt to collect the judgment, and whether Kazlow and Xaverian committed conversion. Specifically, given the stay in collection activity from the September 15, 2015 OSC through the denial of the OSC on November 5, 2015, Kazlow and Xaverian had no legal authority to garnish Ms. Carmona's wages on September 30, 2015, on October 15, 2015, and on October 30, 2015, nor do they have the legal authority to continue to this day, nine months later, to refuse to return the improperly garnished funds.

36. Defendants' actions inflicted damages on Ms. Carmona. She has suffered severe anxiety and emotional distress. Ms. Carmona supports her entire household – the garnishment took her completely by surprise, and she had to borrow money in order to pay her rent and electricity, which she was loathe to do. She went to the doctor several times for anxiety and high blood pressure, and was prescribed medication for both. She lost her appetite, resulting in substantial weight loss; for weeks, she was also had great difficulty sleeping, and to date, only gets about four hours of sleep a night. She suffered embarrassment at her job due to the garnishment, and has developed social anxiety as well: she is no longer able to socialize with her friends and family as she once did. Ms. Carmona also incurred expenses and lost time having to fight a sewer service default judgment. Reasonable attorney's fees were accrued in getting Defendants to cease their wrongful garnishment and return at least part of her money.

### D. COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AS TO KAZLOW)

37. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

38. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002)("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

39. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

40. The obligation allege to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative tuition debt was incurred primarily for family, personal or household purposes.

41. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

42. Defendant Kazlow is a law firm engaged in the business of collecting debts by filing collection lawsuits on behalf of putative creditors or debt buyers; by making collection phone calls; and by sending out collection letters. Defendant regularly collects consumer debts alleged to be due to another, and that is its primary purpose. Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

43. Per the firm's website, Kazlow & Kazlow is a law firm specializing in creditor representation in collection and bankruptcy. Gene Kazlow is the Senior Partner of Kazlow & Kazlow, according to the firm's website.

44. The actions of Defendant Kazlow enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

45. Defendant Kazlow violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive, or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the representation or implication that nonpayment of any debt will result in the seizure, garnishment, or attachment of any property or wages unless such action is lawful; threatening to take and actually taking an action prohibited by law; using any false, deceptive, or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and taking or threatening to

take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement.

### E.     COUNT 2: CONVERSION (AS TO KAZLOW AND XAVERIAN)

46.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

47.     At all times herein Defendant Kazlow was acting as the agent of Xaverian, and acted within the course and scope of that agency. Kazlow was also the apparent agent of Xaverian.

48.     The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights. Property subject to conversion includes readily identifiable funds from a paycheck.

49.     Defendants intentionally and without authority, assumed and exercised control over Ms. Carmona's wages and money, interfering with Ms. Carmona's right to possession of the same, despite having no legal authority to do so.

50.     Ms. Carmona gave notice of ownership of the money and demanded return, and release of the same. Defendants continue to refuse to return the money, even as of today.

51.     Defendants' improper restraint of Ms. Carmona's money for an unreasonable period of time without qualification, which harmfully interfered with her rights to control her own property, constitutes conversion. For the reasons stated in the statement of facts Defendants' conduct is gross, wanton, or deliberate and demonstrates a high degree of moral culpability. The conduct demonstrates malice, insult, and/or willful or reckless disregard of Ms. Carmona's rights, or other aggravated acts. Defendants' conduct evidences a high degree of moral

culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

52. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's wages and money, and consequential damages resulting therefrom, including emotional distress damages.

### F. JURY DEMAND.

53. Plaintiff demands a trial by jury.

### G. PRAYER

54. WHEREFORE, Plaintiff requests the following relief:

  a. A declaration that Defendants have committed the violations of law alleged in this action;

  b. Actual damages against all Defendants;

  c. Statutory damages under 15 U.S.C. § 1692k against Defendant Kazlow;

  d. Exemplary and punitive damages for conversion against all Defendants;

  e. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k against Defendant Kazlow;

  f. Prejudgment and post judgment interest as allowed by law;

  g. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: Brooklyn, New York
    August 24, 2016

                    Respectfully submitted,
                    /s/
                    Ahmad Keshavarz
                    The Law Office of Ahmad Keshavarz
                    16 Court St., 26th Floor

10

Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

11

Last Saved: 8/24/2016 12:30 PM