UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MARILUZ CARMONA,

                              Plaintiff,

                        v.

GENE KAZLOW, P.C. d/b/a KAZLOW &
KAZLOW and XAVERIAN HIGH SCHOOL,

                            Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
16-CV-4723 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Mariluz Carmona commenced the above-captioned action against Defendants

Gene Kazlow, P.C. doing business as Kazlow & Kazlow ("Kazlow") and Xaverian High School

("Xaverian"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

*seq.* (the "FDCPA") and asserting a claim for conversion in connection with Defendants' efforts

to collect a debt in violation of an order staying collection.  (Am. Compl., Docket Entry No. 17.)

Defendants move for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil

Procedure.  (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 16; Defs. Statement of

Undisputed Facts Pursuant to Local R. 56.1 ("Defs. 56.1"), Docket Entry No. 16-40; Defs. Mem.

of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 16-42.)  For the reasons set

forth below, the Court grants Defendants' motion for summary judgment.

    **I.   Background**

      The following facts are undisputed except as noted.  On or about January 11, 2005,

Kazlow, a commercial litigation and debt collection firm, was retained by Xaverian High School

to collect $4634 in unpaid tuition from Plaintiff.  (Defs. 56.1 ¶ 5; Pl. Response to Defs. 56.1 ("Pl.

56.1") ¶ 5, Docket Entry No. 26.)  Kazlow commenced an action against Plaintiff to collect the debt in New York City Civil Court on April 27, 2005.  (Defs. 56.1 ¶ 8.)  On July 18, 2005, the civil court entered a default judgment against Plaintiff and in favor of Xaverian in the amount of $6687.18 (the "Default Judgment").  (*Id.* ¶ 9.)  On or about February 4, 2015, Kazlow issued an income execution (the "Income Execution") to garnish Plaintiff's wages and sent it to City Marshal Martin A. Bienstock (the "City Marshal") for service and enforcement.  (*Id.* ¶ 11.)  The City Marshal's office received the first payment from the New York City Office of Payroll Administration (the "OPA")[1] on April 14, 2015 and the second on May 13, 2015, in the amounts of $145.26 and $290.52, respectively.  (*Id.* ¶ 14.)

    a.    **May 15 Order to Show Cause**

On or about May 15, 2015, Plaintiff filed a motion to vacate the Default Judgment and the civil court judge issued an order to show cause (the "May 15 OSC") and a temporary stay of enforcement of the Default Judgment.  (*Id.* ¶ 15.)  The civil court directed Plaintiff to serve the City Marshal's office with a copy of the May 15 OSC, which Plaintiff did on May 18, 2015.  (Pl. 56.1 ¶ 16.)  The City Marshal's office sent a letter to Kazlow that same day informing them of the May 15 OSC.  (Defs. 56.1 ¶ 16.)  The City Marshal's office prepared a form letter, which it sent to the OPA by fax and mail on or about May 19, 2015, stating that the office had been served with an order to show cause and a stay of enforcement and that OPA was "not to make further deductions nor release any monies previously withheld from [Plaintiff], pending the decision of the Court.  This office will notify you of said decision."  (*Id.* ¶ 17.)

---

[1]  Because Plaintiff is employed by the New York City Department of Education, (Defs. 56.1 ¶ 10), her wages were garnished through OPA.

2

After it faxed the letter of May 18, 2015 to the OPA, the City Marshal's office did not receive any payment from OPA and did not send any of Plaintiff's garnished wages to Kazlow until after the civil court judge decided Plaintiff's motion to vacate.  (*Id.* ¶ 18; Pl. 56.1 ¶ 18.)  On or about September 4, 2015, the civil court judge denied Plaintiff's motion to vacate the Default Judgment, and a week later, on September 11, Kazlow faxed a letter to the City Marshal's office notifying them that Plaintiff's motion had been denied and the garnishment could proceed. (Defs. 56.1 ¶ 22; Pl. 56.1 ¶ 22.)  On September 14, 2015, the City Marshal's office informed OPA that it was required to reinstate the Income Execution and resume sending deductions from Plaintiff's pay to the City Marshal's office.  (Def. 56.1 ¶ 23.)

**b.   September 16 Order to Show Cause**

On or about September 16, 2015, Plaintiff filed another motion requesting permission to reargue the order denying her motion to vacate the Default Judgment.  (*Id.* ¶ 24.)  The civil court judge issued another order to show cause (the "September 16 OSC") and a second temporary stay of the Default Judgment.  (*Id.*)  Kazlow received a copy of the September 16 OSC but assumed that Plaintiff had sent a copy of it to the City Marshal because she had done so with the earlier order to show cause.[2]  (*Id.* ¶¶ 26, 27.)

OPA garnished Plaintiff's wages on September 30 and on October 15, 2015.  (Defs. 56.1 ¶ 36; Pl. 56.1 ¶ 36.)  On October 14, 2015, the City Marshal's office received a payment from OPA for $149.65 in connection with Plaintiff's Income Execution.  (*Id.* ¶ 29.)  After deducting their fee, on October 15, 2015, the City Marshal's office issued a payment in the amount of $142.17 to Kazlow.  (*Id.* ¶ 30.)  Kazlow received the check on October 19, 2015, and Defendants

---

[2]  Plaintiff notes that the September 16 OSC, by its explicit terms, only directed her to serve Kazlow, and that is what she did.  (Pl. 56.1 ¶ 26.)

3

assert that Kazlow then called the City Marshal's office and informed them that no further payments should be forwarded because of the September 16 OSC.[3]  (*Id.* ¶¶ 31–32.)  Kazlow did not remit any portion of the payment to Xaverian.  (*Id.* ¶ 66.)

On October 20, 2015, Kazlow faxed a letter to the City Marshal's office with copies of the September 16 OSC and Plaintiff's pay statements.  (Defs. 56.1 ¶ 40.)  Kazlow's letter stated that "according to the [c]ourt, any monies collected after [September 17, 2015] are to be returned to [Plaintiff].  We received a total of $142.17 from your office, which we are returning back to [Plaintiff].  Please return any funds over and above that amount that were collected."  (*Id.*)  The City Marshal's office requested that Kazlow return the $142.17 to the City Marshal's office to be combined with the deducted fee and subsequently returned to Plaintiff.[4]  (*Id.* ¶ 42.)  Plaintiff asserts that, based on the City Marshal's notes from a telephone call between Kazlow and the City Marshal on October 21, 2015,  Kazlow "instructed the [City] Marshal to hold any additional money that had been collected — contradicting [Kazlow's] October 20, 2015 letter and in direct contravention of the September 16, 2015 stay."  (Pl. 56.1 ¶ 48.)

---

[3]  Plaintiff states that she has no basis to admit or deny this fact because Defendants have refused to answer Plaintiff's discovery requests and neither the employees of Kazlow's office nor the City Marshal have been deposed.  (Pl. 56.1 ¶ 32.)

[4]  Plaintiff states that she has no basis to dispute Defendants' representations that Kazlow faxed the letter to the City Marshal's office requesting that Plaintiff be reimbursed, because Defendants have not answered Plaintiff's discovery requests and the documentary evidence does not address this issue.  (Pl. 56.1 ¶¶ 40–42.)

On or about October 20, 2015, the City Marshal's office faxed a form letter to the OPA stating that the office had been served with an order to show cause and a stay of enforcement and that the OPA was "not to make further deductions nor release any monies previously withheld from [Plaintiff], pending the decision of the Court.  This office will notify you of said decision." (*Id.* ¶ 33.)

### c.   Garnishments and refunds of Plaintiff's salary

On November 3, 2015, Plaintiff's attorney called Kazlow to inform them that the amounts withheld from Plaintiff's paychecks had not been refunded and that her salary had again been garnished on October 30, 2015.  (Defs. 56.1 ¶ 44; Pl. 56.1 ¶ 44.)  On November 4, 2015, Plaintiff's attorney followed up with an email to Kazlow, attaching copies of Plaintiff's pay statements from September 30, October 15 and October 30, 2015, that reflected a total amount of $630.93 withheld during the pendency of the stay.  (Def. 56.1 ¶ 49.)  Plaintiff's attorney informed Kazlow that they were violating the stay and demanded that Plaintiff's wages no longer be garnished until a decision was issued on her motion in civil court.  (*Id.*)

In discussing the issue with the City Marshal's office, Kazlow was told that the City Marshal's office had faxed a letter to the OPA on or about October 20, 2015, informing them of the stay; that the City Marshal's office had only received one payment in the amount of $149.65 since the September 16 OSC was issued; and that any other garnishments of Plaintiff's pay might be attributable to another income execution for a different judgment.  (*Id.* ¶ 51.)

Kazlow then emailed Plaintiff's counsel, attaching a copy of the City Marshal's letter to the OPA from October 20, 2015 and stating:

> I spoke with [the City Marshal]'s office today and I was advised that on October 20, 2015 they notified [the OPA] of the stay on your client's OSC (see attached letter).  They got confirmation receipt from [the OPA].  However, they will send another letter to

> [the OPA]. They also said that the only amount they received in
> October, was 149.65 . . . . They did not receive any additional
> monies in October. They mentioned that the garnishments could
> be from another creditor. Please check with your client to see if
> there is another judgment against her. I am doing my best to
> resolve the issue.

(*Id.* ¶ 53.) Kazlow never received a response from Plaintiff's counsel, "which led her to assume

that the problem concerning the garnishment of [Plaintiff's] pay had been resolved without the

need for further action." (*Id.* ¶ 54.)

Defendants assert that the City Marshal's office issued check 508958 to Plaintiff in the

amount of $149.65 on November 6, 2015 and mailed it to Plaintiff, but the check was never

cashed. (*Id.* ¶ 57.) Plaintiff states that she never received check 508958, nor have Defendants

provided a copy of the check or evidence that it was issued or mailed. (Pl. 56.1 ¶ 57.)

Defendants have submitted admissible contemporary business records indicating that the City

Marshal drew and mailed check 508958. (*See* Decl. of Martin A. Bienstock ¶¶ 19, 22, 25–26,

Docket Entry No. 16-5; *see* Marshal Bienstock Case Notes at 7, 9, 13–14, Docket Entry No. 16-

13 (reflecting that refund was sent on November 6, 2015, remained unclaimed as of July 28,

2016, and was reversed and stopped on September 13, 2016).)

On November 17, 2015, Plaintiff's motion for reargument was denied in New York City

Civil Court. (*Id.* ¶ 55.) Kazlow asked the City Marshal's office to resume collection of the

Income Execution on or about February 17, 2016. (Defs. 56.1 ¶ 61.) On February 18, 2016, the

City Marshal's office faxed a form letter to the OPA directing the OPA to reinstate the Income

Execution. (*Id.* ¶ 62.) On or about April 11, 2016, the City Marshal's office received a check

from the OPA in the amount of $299.30, which was the first payment the City Marshal's office

received from the OPA after October 14, 2015. (*Id.* ¶ 63.) Kazlow received that payment on

April 22, 2016, and it was the first payment Kazlow had received since the check on October 19,

2015 in the amount of $142.17.  (*Id.* ¶ 64.)

Plaintiff commenced this action on August 24, 2016.  (*Id.* ¶ 67; Compl., Docket Entry No. 1.)  On or about September 9, 2016, the City Marshal's office called the OPA and learned that the OPA was holding $149.65 that it had withheld from Plaintiff's pay on May 15, 2015, and $331.63 that it had withheld from Plaintiff's pay on October 15, 2015.  (Defs. 56.1 ¶ 71.)  The parties dispute whether Kazlow was aware that the City Marshal's letter directed the OPA to hold the funds that were improperly withheld during the temporary stay.  (*See* Pl. 56.1 ¶ 71.)  Plaintiff received a refund of $149.65 on or about November 16, 2015 and refunds totaling $636.15 on or about September 30, 2016.[5]  (*Id.* ¶ 81.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not

---

[5]  It is not clear from the record precisely which of Plaintiff's garnished paychecks were refunded on these dates.

sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b.   FDCPA claims against Kazlow

Plaintiff alleges that Kazlow violated sections 1692e and 1692f of the FDCPA. (Am. Compl. ¶ 45.) Plaintiff argues that Kazlow violated the FDCPA by "failing to take any steps to correct what it knew by November 5, 2015 was an instruction by the [City] [M]arshal to [the OPA] that would result in [the OPA] retaining and refusing to release funds garnished after the September 15[, 2015] collection stay." (Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Opp'n Mem.") 15, Docket Entry No. 27.)

Plaintiff argues that Kazlow violated section 1692e(10) of the FDCPA by "ratifying the [City] [M]arshal's instruction to the employer 'not to . . . release any monies previously held'" when Kazlow knew that some of the previously garnished funds "could not legally be garnished because of the stay." (*Id.* at 18.) Plaintiff argues that Kazlow violated section 1692f for substantially the same reasons: (1) by "failing to promptly inform the [City] [M]arshal of the stay," (2) by "silence or inaction," allowing the City Marshal to continue to have OPA garnish Plaintiff's wages in violation of the stay, and (3) by refusing to refund the garnishments to Plaintiff for eleven months. (*Id.* at 20–21.)

Defendants argue that no reasonable juror would find that Kazlow violated sections 1692e or 1692f because Kazlow never misled or deceived Plaintiff in collecting the debt and because the City Marshal acted properly — he informed the OPA of the stay when he learned of it, and Kazlow ensured that he learned of it promptly after they realized the OPA had continued

to withhold Plaintiff's funds during the pendency of the stay.  (Defs. Mem. 15.)

Because Plaintiff asserts that the same conduct underlies both the section 1692e and section 1692f claims, (*see* Pl. Opp'n Mem. 16), the Court considers whether, based on the undisputed facts of the conduct at issue, a reasonable jury could find that Kazlow violated either provision of the FDCPA.

### i.   Statutory framework

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692e); *see also Carlin v. Davidson Fink LLP*, 852 F.3d 207, 214 (2d Cir. 2017) ("We have . . . recognized that the 'FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors.'" (emphasis omitted) (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))); *Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) ("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" (quoting *Kropelnicki*, 290 F.3d at 127)).  "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices."  *Benzemann*, 806 F.3d at 100 (citing 15 U.S.C. § 1692k).

To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt,

(2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must ha[ve] engaged in an[] act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc. (Polanco II)*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)); *see also Benzemann*, 806 F.3d at 100 ("[T]he FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices.").[6]

The FDCPA prohibits debt collectors from, among other things, making false or misleading representations.  15 U.S.C. § 1692e.  Section 1692e specifies certain categories of conduct that are prohibited, including making false representations about the amount or legal status of any debt, threatening to take any action that cannot legally be taken or that the debt collector does not intend to take, and using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Id.*; *see Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within [the ban on false, deceptive, or misleading representations or means in connection with the collection of any debt].").

 Section 1692f prohibits the use of "unfair or unconscionable means" to collect a debt. 15 U.S.C. § 1692f; *Rogers v. Capital One Servs., LLC*, 447 F. App'x 246, 249 (2d Cir. 2011) (describing section 1692f as a "catchall provision prohibiting the use of any unfair or unconscionable means to collect or attempt to collect any debt" (citation and internal quotation marks omitted)); *Bank v. Cooper, Paroff, Cooper & Cook*, 356 F. App'x 509, 511 (2d Cir. 2009) (holding that both the collection and the attempted collection of a debt in violation of section

---

[6] The parties do not appear to dispute that Plaintiff is a "consumer" who owed a "debt" as defined by the FDCPA, and that Kazlow is a "debt collector" as defined under the FDCPA.

1692f violate the FDCPA); *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 314 (E.D.N.Y. 2015) (noting that in its prefatory clause, section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt. . . . The list of [section] 1692f violations found in the subsections are nonexhaustive . . . ." (citation and internal quotation marks omitted)). "Courts analyzing claims under 1692f have acknowledged that the phrase 'unfair or unconscionable' is as vague as they come." *Rojas v. Forster & Garbus LLP*, No. 13-CV-02825, 2014 WL 3810124, at *5 (E.D.N.Y. July 31, 2014) (alteration, citations and internal quotation marks omitted).

### ii. Failing to promptly inform the City Marshal of the September 16 OSC

Plaintiff argues that Kazlow violated the FDCPA when it failed to promptly inform the City Marshal of the September 16 OSC.[7]  (Pl. Opp'n Mem. 12.)  Defendants argue that Kazlow was not obligated to notify the City Marshal of the September 16 OSC and did not otherwise deceive, mislead or misrepresent anything to Plaintiff.  (Defs. Reply in Further Supp. of Defs. Mot. ("Defs. Reply") 2, Docket Entry No. 31.)

Kazlow did not violate the FDCPA by failing to inform the City Marshal of the September 16 OSC because it was under no obligation to serve the City Marshal with the September 16 OSC and Plaintiff has not identified how Kazlow's conduct was otherwise false or deceptive, *see* 15 U.S.C. § 1692e, or unfair or unconscionable, *see id.* § 1692f.

As Defendant correctly notes, under New York law, the duty to notify a marshal or a sheriff of an order is placed on the party who obtains the order, rather than the opposing party or its attorney, who "cannot be faulted for not having borne the [complaining party's] burden." *See*

---

[7]  Plaintiff does not argue that the City Marshal was Kazlow's agent for purposes of this collection but, as discussed in Part II(b)(iii), *infra*, argues that Kazlow ratified the City Marshal's conduct.

*Chelsea Marina, Inc. v. Scoralick*, 463 N.Y.S.2d 489, 493 (App. Div. 1983) (holding that a landlord's attorney had no obligation to recall execution or serve the sheriff with notice of a stay); *Hosp. Serv. Plan of N.J. v. Warehouse Prod. & Sales Emps.*, 429 N.Y.S.2d 31, 33 (App. Div. 1980) (holding that judgment creditors were not obligated to recall an execution, "it being incumbent upon [the judgment debtors] to protect their own interests by serving the [s]heriff" even where the order did not provide for service to the sheriff); *see also Martin v. Consol. Edison Co. v. N.Y., Inc.*, 576 N.Y.S.2d 290, 290 (App. Div. 1991) (holding that the plaintiff who issued the execution was "under no obligation to recall [it]" where the defendant had obtained the stay in its favor (citing *Hosp. Service Plan of N.J.*, 429 N.Y.S. at 33)); *Felder v. Bentley*, 872 N.Y.S.2d 690, 2008 WL 4118090, at *2 (Dist. Ct. 2008) (holding that "it was the sole obligation of the [r]espondent to serve the sheriff with a copy of the stay in order to avoid being evicted from her residency" (citing *Hosp. Service Plan of N.J.*, 429 N.Y.S. at 33)).  Although this authority arises in the context of landlord-tenant law, the Court nevertheless finds it probative, as Defendants should not be liable under the FDCPA for conduct that complies with their legal obligations during litigation.

Moreover, Defendants reasonably relied on Plaintiff's earlier service upon the City Marshal of the May 15 OSC and, immediately upon realizing that Plaintiff had not served the City Marshal with the September 16 OSC, attempted to remedy the improper garnishment.

The May 15 OSC indicated that Plaintiff should serve both Kazlow and the City Marshal. (*See* May 15 OSC, Docket Entry No. 16-15.)  Plaintiff did so.  (Pl. 56.1 ¶ 16.)  The September 16 OSC, by contrast, indicated that Plaintiff should serve Kazlow, (*see* Sept. 16 OSC, Docket Entry No. 16-21), and Plaintiff complied, (Pl. 56.1 ¶ 26).  Kazlow states that because Plaintiff served the City Marshal with the May 15 OSC, it assumed she would similarly serve the City Marshal

with the September 16 OSC.  (Def. 56.1 ¶¶ 26, 27.)  Plaintiff states that she did not serve the City

Marshal with the September 16 OSC because the OSC did not instruct her to, but "[d]espite that,

Kazlow never disclosed the September 16 OSC until after the [City] [M]arshal informed Kazlow

on or about October 19 of a recent garnishment."  (Pl. Opp'n Mem. 12.)  The Court has not

located, nor has Plaintiff provided, any authority to suggest that Kazlow had an obligation to

"disclose" the September 16 OSC to the City Marshal or that its mistaken noncompliance with

such an obligation would constitute a deceptive, unconscionable or unfair practice under the

FDCPA.  Nevertheless, the very day that Kazlow received its first payment garnished in

violation of the stay, it called the City Marshal's office and informed them that no further

payments should be collected or forwarded.  (Defs. 56.1 ¶¶ 30–32.)  Plaintiff neither disputes this

nor explains in what way it was deceptive, misleading, unconscionable or unfair.

  The Court therefore dismisses Plaintiff's FDCPA claims under both sections 1692e and

1692f to the extent that they are based on Kazlow's failure to timely inform the City Marshal of

the September 16 OSC.

### iii. Ratifying the City Marshal's October 20, 2015 letter to the OPA

  Plaintiff argues that Kazlow violated sections 1692e and 1692f "by ratifying the [City]

[M]arshal's instruction to [the OPA]" because Kazlow knew that some of the previously

garnished wages could not legally be garnished after the September 16 OSC.  (Pl. Opp'n Mem.

18.)  According to Plaintiff, the City Marshal violated the September 16 OSC when, on October

20, 2015, he notified the OPA of the stay and told the OPA not to release Plaintiff's previously

garnished wages.  (*Id.* at 13.)  Defendants argue that Kazlow did not ratify the City Marshal's

conduct and that, even if it had, the City Marshal did not violate the FDCPA when he sent a form

letter to the OPA informing it of the stay and including instructions not to release previously

garnished wages.  (Defs. Reply 3–4.)  Because, as explained below, the Court finds that Kazlow did not ratify the City Marshal's conduct, it declines to consider whether the City Marshal violated the FDCPA when he instructed the OPA "not to make further deductions nor release any monies previously withheld from [Plaintiff], pending the decision of the Court."[8]  (*See* Defs. 56.1 ¶ 33.)

"Ratification is the act of knowingly giving sanction or affirmance to an act which would otherwise be unauthorized and not binding."  *In re Adelphia Recovery Tr.*, 634 F.3d 678, 691 (2d Cir. 2011).  "Ratification may be express or implied, or may result from silence or inaction."  *Id.* at 692 (alteration and citations omitted); *see also RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 235 (E.D.N.Y. 2009) ("Under New York law, a principal can be held liable for the unauthorized acts of an agent that the principal later ratifies. . . .  Ratification is the express or implied adoption, *i.e.* recognition and approval, of the unauthorized acts of another."). In all cases, ratification requires both "knowledge of a defect in the act to be confirmed" and "the right to reject or ratify it."  *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394, 2016 WL 4613390, at *16 (S.D.N.Y. Aug. 31, 2016) (citing *In re Estate of Edgar Wolf Levy*, 893 N.Y.S.2d 142, 144 (App. Div. 2010)).  Ratification "must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language."  *Id.* (quoting *Chem. Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d Cir. 1999), *vacated on other grounds sub nom. Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003)); *see also Municipality of Bremanger v. Citigroup Glob. Mkts., Inc.*, No. 09-CV-7058,

---

[8]  The Court notes that the language at issue is equally amenable to an interpretation that the OPA not release money to the City Marshal, rather than a direction that the OPA not release money to Plaintiff.

2013 WL 1294615, at *21 (S.D.N.Y. Mar. 28, 2013) (holding that the defendant had not ratified the transaction where it accepted the benefits flowing from a sale but the plaintiffs failed to proffer evidence that the defendant was fully aware of the material facts of the transaction); *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 552 (1997) (holding that an insurance company had not impliedly ratified an agent's contract where it "received no premiums or any other benefit in connection with the fraudulent financing agreements").

In a seminal case on ratification, the New York Court of Appeals explained that an "implied ratification" occurs where the beneficiary's subsequent conduct "supports the reasonable conclusion that he, by his assent thereto or acquiescence therein, has accepted and adopted" the fiduciary's actions. *Pollitz v. Wabash R.R. Co.*, 207 N.Y. 113, 129 (1912) (alterations omitted); *see In re Levy*, 893 N.Y.S.2d at 144 (quoting *Pollitz*, 209 N.Y. at 129); *Hempstead Realty, LLC v. Sturrup*, 55 Misc.3d 1219(A), 2017 WL 2215747, at *6 (N.Y. Sup. Ct. 2017) (quoting *Pollitz*, 207 N.Y. at 129).  Although "an act, such as an acceptance of benefits, may constitute a ratification, and acquiescence may give rise to an implied ratification," "[m]ere negligence is not ratification."  *Adelphia*, 634 F.3d at 693.  "However, the intent can be implied from knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence or where the effect of the contract depends upon future events."  *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp.3d 159, 165 (S.D.N.Y. 2016) (quoting *Chem. Bank*, 169 F.3d at 128); *see also Holm v. C.M.P. Sheet Metal, Inc.*, 455 N.Y.S.2d 429, 432 (App. Div. 1982) (comparing cases in which a landlord received rent pursuant to a lease made by an agent and explaining that where the landlord had knowledge of the terms of the lease, he ratified the agent's acts and where the landlord did not have knowledge of the terms of the lease, he had not

ratified the agent's acts).

Here, Plaintiff has not presented any evidence to support her contention that Kazlow ratified the City Marshal's October 20, 2015 letter to the OPA when Kazlow failed to countermand the City Marshal's instructions.  Plaintiff argues that Kazlow "indisputably knew no later than November 5, 2015 that the [City Marshal] had instructed [the OPA] to violate the stay by instructing [the OPA] 'not to . . . release any funds previously withheld'" because Kazlow forwarded Plaintiff's attorney an email chain on November 5 that attached the October 20 letter.  (Pl. Opp'n Mem. 15.)  Despite this, Kazlow "took no steps to instruct [the OPA] to release any wages garnished" since the September 16 OSC, reflecting an "inaction" that ratified the City Marshal's directive.  (*Id.*)

Plaintiff's arguments are unpersuasive for several reasons.  First, Plaintiff has not demonstrated that Kazlow had "knowledge" that the OPA had funds to release to Plaintiff that were improperly garnished during the pendency of the stay.  Plaintiff does not dispute that before Kazlow emailed Plaintiff's attorney on November 5, 2015, attaching the October 20 letter, Kazlow had verified that the City Marshal had not received any improperly garnished wages from Plaintiff and had been told that, to the extent that Plaintiff was reporting amounts that were withheld during the pendency of the stay, those withholdings may be attributable to another income execution.  (*See* Defs. 56.1 ¶¶ 46–47, 50–51; Pl. 56.1 ¶¶ 46–47, 50–51.)  Nor does Plaintiff dispute that Kazlow communicated this information to Plaintiff on November 5, 2015 and never received a response to the inquiry about whether the withholdings could have arisen from other judgments.  (*See* Defs. 56.1 ¶ 54; Pl. 56.1 ¶ 54.)  Thus, no rational juror could conclude that Kazlow had "full knowledge of the material facts," *see Chem. Bank*, 169 F.3d at 128 — namely, that the OPA had not released to Plaintiff the funds it had improperly withheld

while the September 16 OSC was in effect.

In addition, in order for ratification to be implied, "the party seeking ratification [must have] in some way relied upon the principal's silence." *Cammeby's Mgmt.*, 152 F. Supp. 3d at 165 (quoting *Chem. Bank*, 169 F.3d at 128). Plaintiff has not presented any facts to support a conclusion that she relied on Kazlow's "silence," or, in this case, failure to correct any inaccuracies in the City Marshal's October 20 letter.

Finally, Kazlow "received no . . . benefit in connection with" the City Marshal's direction to the OPA that it retain Plaintiff's previously garnished funds, *see Lewitt*, 89 N.Y.2d at 552; in fact, on October 27, 2015, Kazlow mailed the City Marshal a check in the amount of $142.17 in order to refund the wages garnished during the September 16 OSC, (*see* Defs. 56.1 ¶ 43). Plaintiff does not dispute that Kazlow received no other payments from the City Marshal in connection with the Income Execution during the pendency of the September 16 OSC. (Defs. 56.1 ¶ 65; Pl. 56.1 ¶ 65.) Thus, "the rule that ratification may be implied where the principal retains the benefit of an unauthorized transaction with knowledge of the material facts has no application here." *See Lewitt*, 89 N.Y.2d at 552. The Court concludes that no reasonable juror could find that Kazlow ratified the City Marshal's language on October 20, 2015, which allegedly caused the OPA to not release Plaintiff's garnished wages. Plaintiff's FDCPA claims are therefore dismissed to the extent that they are based on Kazlow's ratification of the City Marshal's October 20, 2015 letter.

### iv.   Refusing to refund the garnishments to Plaintiff

Plaintiff relies on *Polanco v. NCO Portfolio Management, Inc.* (*Polanco I*), 930 F. Supp. 2d 547, 552 (S.D.N.Y. 2013), to argue that Kazlow violated section 1692f by "mak[ing] an end-run around the September 16 OSC by having [the OPA] retain funds [Kazlow knew] were

garnished in violation of the stay." (Pl. Opp'n Mem. 19.) Defendants argue that the City Marshal mailed Plaintiff check 508958 on November 6, 2015, reimbursing the money that the City Marshal had in its possession from Plaintiff's improperly garnished wages, and that even if Plaintiff disputes that check 508958 was mailed, Kazlow had no further information that Plaintiff's garnished wages had not been returned to her because Plaintiff's attorney never responded to the last correspondence from Kazlow. (Defs. Reply 9.)

In *Polanco I*, the defendant attempted to collect the plaintiff's credit card debt "via a two-part scheme: falsifying an affidavit of service to obtain a default judgment against her and ignoring subsequent [c]ourt [o]rders to return the improperly collected debt for over a ten-month period." *Polanco I*, 930 F. Supp. 2d at 551. The court held that the defendant's conduct "of fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to obey promptly that same [c]ourt's [o]rders" fell within the FDCPA's "broad purpose to protect consumers from such alleged abusive and unfair tactics," even while the defendant's conduct did not strictly fall within the FDCPA's proscribed behaviors. *Id.* at 552. In its decision on summary judgment, the court found that there was "no question" that the defendant "had copies of the two [o]rders first vacating the default judgment and then unequivocally requiring return of [the p]laintiff's funds 'forthwith.'" *Polanco II*, 132 F. Supp. at 584 (granting partial summary judgment for the plaintiff).

Here, unlike in *Polanco I*, Plaintiff does not allege that Defendants obtained a fraudulent judgment, and there is no evidence to support Plaintiff's allegation that Kazlow violated or intended to violate an explicit court order. Indeed, the September 16 OSC instructed Defendants to stay the Income Execution, and, as Defendants observe, the City Marshal was not required to implement the stay until after he was served. (*See* Defs. Reply 9); *see Felder*, 872 N.Y.S.2d at

18

690 ("In the case at bar, neither party informed the sheriff of the stay of eviction, therefore, the sheriff is not at fault for executing the eviction when he possessed a valid warrant to do so and he was not served with the stay." (citing *Chelsea Marina*, 463 N.Y.S.2d at 493)). Immediately after the City Marshal was informed of the stay, the City Marshal informed the OPA to stop garnishing Plaintiff's wages, in compliance with the September 16 OSC. (*See* Defs. 56.1 ¶ 33; Pl. 56.1 ¶ 33.)

Unlike in *Polanco*, the court did not direct Defendants to return Plaintiff's garnished funds "forthwith," *see Polanco II*, 132 F. Supp. at 584, and neither Kazlow nor the City Marshal had reason to believe that Plaintiff's funds were being withheld improperly as a result of their judgment, as opposed to some other judgment. (*See* Defs 56.1 ¶¶ 54–54.) Furthermore, there is undisputed evidence that Kazlow immediately attempted to implement a refund of the wages that it understood had been garnished improperly during the pendency of the stay. (*See* Defs. 56.1 ¶¶ 40–42.) Thus, even if, as Plaintiff asserts, the City Marshal did not mail her check 508958 in November of 2015,[9] Kazlow promptly notified the City Marshal's office of the September 16 OSC, provided Plaintiff's pay statements reflecting the improper garnishments and instructed the City Marshal that "any monies collected after [September 17, 2015] are to be returned to [Plaintiff.] We received a total of $142.17 from your office, which we are returning back to [Plaintiff]. Please return any funds over and above that amount that were collected." (Defs. 56.1 ¶ 40.) Plaintiff has not provided any evidence that the City Marshal or Kazlow had reason to

---

[9] Although Defendants have submitted admissible contemporary business records indicating that the City Marshal drew and sent check 508958, Plaintiff asserts that she never received the check. (*See* Pl. 56.1 ¶ 57; *see* Decl. of Martin A. Bienstock ¶¶ 19, 22, 25–26, Docket Entry No. 16-5; *see* Marshal Bienstock Case Notes at 7, 9, 13–14, Docket Entry No. 16-13 (reflecting that refund was sent on November 6, 2015, remained unclaimed as of July 28, 2016, and was reversed and stopped on September 13, 2016).)

know of any further improper garnishments after that date, and, without such evidence, no rational juror could conclude that Kazlow refused to refund Plaintiff's funds.

Because there is no genuine issue of disputed fact and no rational juror could find, based on the facts of this case, that Kazlow violated sections 1692e or 1692f of the FDCPA, the Court grants Defendants' motion for summary judgment on Plaintiff's FDCPA claims.

### c. Conversion

Plaintiff alleges that both Defendants "intentionally and without authority . . . exercised control over [Plaintiff's] wages and money" and interfered with her right to possession of that money.  (Am. Compl. ¶ 51.)

A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *Alliance of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 14 (2d Cir. 2015) (holding that it was "not improper for the court to decline to exercise its supplemental jurisdiction" after it properly dismissed the plaintiff's constitutional claims); *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." (alteration in original) (quoting *Castellano v. Bd. of Trs.*, 937 F.3d 752, 758 (2d Cir. 1991))).

Having dismissed Plaintiff's FDCPA claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim for conversion.  Accordingly, Plaintiff's claim for conversion is dismissed without prejudice.

**III.  Conclusion**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment.


SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 2, 2017
          Brooklyn, New York